IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ANGELOS WASHINGTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:14-cv-01830 |
| ) | |
| STATE OF TENNESSEE, METROPOLITAN ) | Judge Campbell |
| GOVERNMENT, CORRECT CARE SOLUTIONS, ) | |
| DR. [N/F/N/] BURNS, and NURSE CINDY [N/L/N], ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Plaintiff Angelos Washington, a prisoner or pretrial detainee in the custody of the Davidson County Sheriff's Office, brings this *pro se* civil rights action under 42 U.S.C. § 1983 alleging that the medical providers at the Davidson County Sheriff's Office have been deliberately indifferent to the plaintiff's serious medical needs. The plaintiff's complaint is before the Court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e.

**I. Standard of Review**

Under the PLRA, the Court must conduct an initial review of any civil complaint filed *in forma pauperis*, 28 U.S.C. § 1915(e)(2), or brought by a prisoner-plaintiff against government entities or officials, 28 U.S.C. § 1915A, or challenging the conditions of confinement, 42 U.S.C. § 1997e(c). Upon conducting this review, the Court must dismiss the complaint, or any portion thereof, that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2) and 1915A; 42 U.S.C. § 1997e(c). The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under those statutes because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

A *pro se* pleading must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). *Pro se* status, however, does not exempt a plaintiff from compliance with relevant rules of procedural and substantive law. *See Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) ("Neither [the Supreme] Court nor other courts . . . have been willing to abrogate basic pleading essentials in *pro se* suits.").

## II.    Factual Allegations

Plaintiff Angelos Washington sues "The State of Tennessee Metropolitan Gov." which the Court construes to mean both the State of Tennessee and the Metropolitan Government of Nashville and Davidson County ("Metro Nashville"). He also names as defendants Correct Care Solutions ("CCS"), the entity in contract with Metro Nashville to provide medical services to inmates of the Davidson County Sheriff's Department Criminal Justice Center ("CJC"), and "Dr. Burns" and "Nurse Cindy," who are employed at the CJC.

The plaintiff alleges that he is a paraplegic as a result of a gunshot wound in 2001. He uses an "in and out self cath. to empty his bladder." (Complaint, ECF No. 1, at 5.) According to the plaintiff, the catheters he uses to empty his bladder are disposable and intended to be used only one time in order to avoid the high risk of kidney infections. The plaintiff states that he has only one functioning kidney. Consequently, a kidney infection in his case could be life-threatening, and his medical providers strictly instructed him to use the catheters once only.

The plaintiff was taken into custody on July 3, 2014. On July 5, 2014, he put in a sick-call because he noticed symptoms of a bladder infection. He was not actually seen by Dr. Burns until July 10, five days later. Dr. Burns put the plaintiff on antibiotics but denied his request to be provided more than one catheter per day, and also denied the plaintiff's request for gloves and disinfectant wipes to help him avoid infection, on the basis of cost.

In August, the plaintiff was in pain and either still suffering from the same bladder infection or had incurred a new infection. He spoke to Nurse Cindy, explaining that the problem was not being able to change catheters frequently enough. Nurse Cindy, like Dr. Burns, denied the plaintiff's request for additional one-use

catheters and instead told the plaintiff to wash out the catheter. Nurse Cindy also told him his request was denied because of the cost.

The plaintiff insists that Dr. Burns' and Nurse Cindy's refusal of his requests for additional catheters, in light of his recurring bladder infections and clear risk of kidney infections, amounts to deliberate indifference to his serious medical needs, in violation of his rights under the Eighth and Fourteenth Amendments to the United States Constitution. Based on the reference to cost, the Court also construes the complaint as asserting that the denial of the plaintiff's request for additional medical supplies based on cost resulted from a policy of either CCS or of the Davidson County Sheriff's Office and Metro Nashville.

### III. Discussion

"To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).

The plaintiff's claims of constitutional violations are based on the alleged failure by jail medical personnel to provide adequate medical care. The Eighth Amendment, by its terms, prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The plaintiff here appears to be a pretrial detainee rather than a convicted prisoner. A pretrial detainee's rights are protected by the Fourteenth Amendment rather than the Eighth, but the standard is basically the same. *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005) ("Although the Eighth Amendment's protections apply specifically to post-conviction inmates, the Due Process Clause of the Fourteenth Amendment operates to guarantee those same protections to pretrial detainees as well.").

In its application by the courts, the Eighth Amendment has been specifically construed to prohibit the "unnecessary and wanton infliction of pain," *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (plurality opinion), and conduct repugnant to "evolving standards of decency," *Trop v. Dulles*, 356 U.S. 86, 101 (1958) (plurality opinion). The amendment imposes affirmative duties on prison officials to "assume some responsibility for [each prisoner's] safety and general well-being," and to "provide for his basic human needs," including medical care. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200

(1989). "Contemporary standards of decency require no less." *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (citing *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976)).

In *Estelle*, the Supreme Court concluded that, although accidental or inadvertent failure to provide adequate medical care to a prisoner would not violate the Eighth Amendment, "deliberate indifference to the serious medical needs of prisoners" violates the Eighth Amendment, because it constitutes the "unnecessary and wanton infliction of pain" contrary to contemporary standards of decency. *Estelle*, 429 U.S. at 104. Under this analysis, what constitutes "unnecessary and wanton infliction of pain" will vary depending on the nature of the alleged constitutional violation, but the Supreme Court has clarified that the question of whether a prisoner's claim based on prison officials' failure to provide adequate medical care involves both a subjective and an objective component.

The objective prong asks whether the harm inflicted by the conduct is sufficiently "serious" to warrant Eighth Amendment protection. *Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992). The Sixth Circuit has defined a "serious medical need" as "either one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 570 (6th Cir. 2013) (quotation marks and citations omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Deliberate indifference "entails something more than mere negligence," *Farmer*, 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To establish the subjective component of an Eighth Amendment *Estelle* violation, a prisoner must plead facts showing that "prison authorities have denied reasonable requests for medical treatment in the face of an obvious need for such attention where the inmate is thereby exposed to undue suffering or the threat of tangible residual injury." *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976). A defendant's state of mind is sufficiently culpable to satisfy the subjective

component of an Eighth Amendment claim when it amounts to a reckless disregard of a substantial risk of serious harm; behavior that is merely negligent will not suffice. *Farmer*, 511 U.S. at 835–36. Thus, when a prisoner has received some medical attention but disputes the adequacy of that treatment, the federal courts are generally reluctant to second-guess the medical judgments of prison officials and thus to constitutionalize claims which sound in state tort law. *Westlake*, 537 F.2d at 860 n.5. Notwithstanding, the Sixth Circuit has also recognized that "in some cases the medical attention rendered may be so woefully inadequate as to amount to no treatment at all." *Id.*

In the present case, the plaintiff alleges that he has recurrent, painful, and potentially life-threatening bladder infections resulting from the refusal of the medical care providers at the CJC to provide a sterile catheter each time he needs to empty his bladder, or even to provide antiseptic wipes or gloves or other materials to help him clean and sterilize the catheters that he is required to reuse. Although the plaintiff has received some medical care, the Court finds that the complaint, construed liberally, alleges facts that, if true, may establish that the defendants have been deliberately indifferent to the plaintiff's objectively serious medical needs in violation of the plaintiff's rights under the Eighth or Fourteenth Amendment, depending upon whether the plaintiff is a state prisoner or pretrial detainee.

Having found that the plaintiff has alleged a deprivation of a Constitutional right, the next question is whether the deprivation was caused by "person[s] acting under the color of state law. 42 U.S.C. § 1983. The Court finds as an initial matter that the plaintiff's claims against the state of Tennessee must be dismissed because the state is not a "person" for purposes of § 1983, and the state is immune from suit pursuant to the Eleventh Amendment. *Quern v. Jordan*, 440 U.S. 332, 340–45 (1979); *see Lawson v. Shelby Cnty., Tenn.*, 211 F.3d 331, 335 (6th Cir. 2000) ("[T]he [Eleventh] Amendment prohibits suits against a 'state' in federal court whether for injunctive, declaratory or monetary relief."). The only exceptions to a state's immunity are (1) if the state has consented to suit or (2) if Congress has properly abrogated a state's immunity. *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008). Neither of these exceptions applies to § 1983 suits against the state of Tennessee. *See Berndt v. Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986) (noting that Tennessee has not waived immunity to suits under § 1983); *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (reaffirming that Congress did not abrogate states' immunity when it passed § 1983).

However, Nurse Cindy and Dr. Burns are clearly "person[s] acting under color of state law" who may be liable under § 1983, because they are persons to whom the obligation to provide medical care to individuals in the custody of the Davidson County Sheriff's Office has been delegated. *See West v. Atkins*, 487 U.S. 42, 56 (1988) (holding that a private medical provider contracted to provide medical care to prisoners is a state actor for purposes of § 1983).

Metro Nashville, a municipality, may be liable under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Likewise, CCS, as the entity responsible for providing medical care to detainees of the Davidson County Sheriff's Office, is also considered a "person" acting under color of state law for purposes of liability under § 1983. *West*, 487 U.S. at 56; *see also Street v. Corrs. Corp. of Am.,* 102 F.3d 810, 814 (6th Cir. 1996) (holding that CCA acted under color of state law because it performed the traditional state function of operating a prison). However, neither Metro Nashville nor CCS can be liable solely on the basis that they employ a tortfeasor, because "*[r]espondeat superior* is not a proper basis for liability under § 1983." *McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 470 (6th Cir. 2006). Instead, an entity defendant can be held responsible for an alleged constitutional deprivation only if there is a direct causal link between the alleged constitutional violation and a policy or custom of the entity. *Monell*, 436 U.S. 658, 694 (1978); *see also Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005) ("Like a municipality, a government contractor cannot be held liable on a *respondeat superior* theory. . . . [A] private contractor is liable for a policy or custom of that private contractor. . . .").

Generally, the plaintiff must "identify the policy, connect the policy to the [entity] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (citations omitted). At this stage in the proceedings, the Court finds that the plaintiff has alleged the existence of a policy emanating either from CCS or Metro Nashville pursuant to which potentially necessary medical supplies deemed too expensive are not provided, giving rise in some cases to the deliberate denial of necessary medical care to inmates. At this juncture, he Court will permit the claims against CCS and Metro Nashville to proceed.

**IV.     Conclusion**

For the reasons set forth herein, the claims against the state of Tennessee will be dismissed, but

the plaintiff will be permitted, at this stage, to pursue his claims against the remaining defendants. An appropriate order is filed herewith.

_____
Todd Campbell
United States District Judge